IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JAMIE THOMAS and ARGUSTER                                    PLAINTIFFS
WILLIAMS, Individually and on
Behalf of All Others Similarly Situated


vs.                              No. 3:19-cv-330-DPM


VISKASE COMPANIES, INC.                                        DEFENDANT


DEFENDANT VISKASE COMPANIES, INC.'S BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFF ARGUSTER WILLIAMS'S CLAIMS

Pursuant to Federal Rule of Civil Procedure 56, Local Rule 7.2, and the Court's Final

Scheduling Order (Doc. 22), Defendant Viskase Companies, Inc. ("Viskase" or "Defendant")

submits this Brief in Support of its Motion for Summary Judgment on Plaintiff Arguster

Williams's ("Williams" or "Plaintiff") Claims.

Viskase cites its supporting Statement of Facts, which is a separate document per Local

Rule 56.1, as "Fact ¶ _."

## I.   INTRODUCTION

This is a wage and hour lawsuit concerning Viskase's facility in Osceola, Arkansas, where

it manufactures food packaging products. Currently, this lawsuit is conditionally certified as a

collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).[1] However,

this Motion only concerns the FLSA claim and the parallel Arkansas Minimum Wage Act

("AMWA") claim named plaintiff Arguster Williams asserts in her individual capacity.

---

[1] Viskase has contemporaneously filed a Motion to Decertify.

Williams worked at Viskase's Osceola facility for some 40 years, most recently as a shift supervisor. As she testified in her deposition, she supervised up to 25 other employees and "was responsible for the whole shift and see[ing] that people do what they were supposed to do." Fact ¶¶ 3-4. Nevertheless, Williams alleges Viskase misclassified her as an exempt salaried employee, thus failing to pay her overtime wages in violation of the FLSA and AMWA. Doc. 1, Complaint ¶¶ 39-53, 92-99, 111-119.

Williams' claims fail as a matter of law because both the FLSA and the AMWA exempt an employee working in an "executive" capacity. *See* 29 U.S.C. § 213(a)(1); Ark. Code § 11-4-203(3)(A). This executive exemption has four elements—discussed in detail in the Argument section below—and they fit Williams exactly. Most importantly, Williams's own testimony shows her primary duty was management, as she admitted interviewing, training, scheduling, directing, evaluating, disciplining, and monitoring the safety and compliance of approximately 25 hourly employees who worked the shift she supervised. *See, e.g.*, Facts ¶¶ 9-10, 14-18, 20-21, 25, 28, 34, 40, 42-43. Williams also satisfies the executive exemption's other elements, and thus Viskase is entitled to summary judgment regarding her individual FLSA and AMWA claims.

## II.  SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if [Viskase] shows that there is no genuine dispute as to any material fact and [Viskase] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Initially, Viskase bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once [Viskase] does so, the burden shifts to Williams to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To do so, Williams must "do more

than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When presiding over an FLSA misclassification claim, courts grant summary judgment to employees based on the FLSA's and the AMWA's executive exemption. *See, e.g.*, *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 886 (8th Cir. 2016) (affirming summary judgment in employer's favor based on the FLSA's and the AMWA's executive exemption); *El-Amin v. City of Eudora*, No. 5:19-CV-00020 BSM, 2020 WL 835313, at *1 (E.D. Ark. Jan. 2, 2020) (granting summary judgment in employer's favor on the same basis).

## III. ARGUMENT

Viskase is entitled to summary judgment on Williams's two individual claims:

- The Fifth Claim for Relief, her individual claim for violation of the FLSA's overtime provisions, Complaint ¶¶ 92-99; and

- The Seventh Claim for Relief, her parallel individual claim for violation of the AMWA's overtime provisions, *id.* ¶¶ 111-119.

Both the FLSA and AMWA recognize an "executive" exemption for an "employee employed in a bona fide executive [] capacity[.]" *See* 29 U.S.C. § 213(a)(1); Ark. Code § 11-4-203(3)(A). There is no genuine dispute Williams—a longtime shift supervisor—fits the executive exemption, and thus Viskase is entitled to summary judgment regarding her individual claims.

### A. Williams is exempt under the FLSA's executive exemption, and thus her individual FLSA claim fails as a matter of law.

The FLSA's overtime provisions "shall not apply with respect to any employee employed in a bona fide executive [] capacity[.]" 29 U.S.C. § 213(a)(1). Under the governing federal regulations, an "employee employed in a bona fide executive capacity" is an employee:

(1) Who is "Compensated on a salary basis … at a rate of not less than $684 per week[];

3

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."

29 C.F.R. § 541.100(a)(1)-(4).

Williams' own deposition testimony reveals she meets each of the executive exemption's four parts.

### (1) Williams was compensated on a salary basis exceeding $684 per week.

The executive exemption requires that an employee be "[c]ompensated on a salary basis … at a rate of not less than $684 per week[.]"*Id.* § 541.100(a)(1). An employee is paid on a "salary basis" if she "regularly receives each pay period … a predetermined amount constituting all or part of the employee's compensation" and that "amount is not subject to reduction because of variations in the quality or quantity of the work performed." *Id.* § 541.602(a).

Williams admits her salary as a shift supervisor averaged approximately $77,314 per year, which is approximately $1,486.80 per week. Fact ¶ 6. She further acknowledged, no matter how many hours she worked, each week she received the same salary. Fact ¶ 5.

### (2) Williams's primary duty was management.

Second, the executive exemption requires that an employee's "primary duty" be "management." 29 C.F.R. § 541.100(a)(2). Under the FLSA, "management" generally "includes, but is not limited to, activities" such as:

> [I]nterviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other

changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

*Id.* § 541.102.

There is no question Williams' work as a shift supervisor involved "management" activities. Her role's job description states its "position purpose" is "[t]o supervise the overall shift for all production activities for CEDA (Chemical, Extrusion, Drying, Area)," Fact ¶ 7, and Williams testified that description accurately described her work, Fact ¶ 8.

Williams also testified she performed "management" work under the FLSA, 29 C.F.R. § 541.102. Specifically, she:

- Interviewed prospective employees, including some family members who came to work for Viskase, and gave her opinions about those prospective employees. Fact ¶¶ 9-10, 12-13.

- Disciplined employees via oral and written "write-ups" warnings for issues relating to work performance, behavior, and attendance, Fact ¶ 33.

- Provided coaching and feedback about performance improvement. Fact ¶¶ 28, 31, 34 (testifying about specific instances concerning at least six different employees).

- Worked with recruiters. Fact ¶ 11.

- Trained other employees by conducting informal orientation for new employees, ensuring new employees completed formal orientation and received training about their job duties, including those who were having a hard time learning the job. Fact ¶¶ 14-19.

- Set and adjusted other employees' hours of work, including their work schedules, informed employees about Viskase's clock-in and clock-out procedures, supervised employee attendance and absences, and found workers to "sub in" to cover employee absences. Fact ¶¶ 14, 17, 19-22.

5

- Directed other employees' work, including communicating and directing them about what work needed to be done, and providing feedback to employees she supervised. Fact ¶¶ 23-25, 28, 31.

- Supervised production by ensuring production was to the right specifications, and ensuring employees reduced production waste. Fact ¶¶ 26-27.

- Assessed other employees' productivity and efficiency because she was responsible for managing shift productivity. Fact ¶¶ 7, 27-28.

- Handled other employees' complaints and grievances because she was the "first person in the chain of command" other employees could talk with; she asked other employees to come to her with any concerns, and thus she fielded employee complaints and dealt with conflicts between employees, Fact ¶¶ 29-32.

- Determined production techniques to be used and ensured employees knew what to produce and the proper way to produce it. Fact ¶ 35.

- Apportioned work among employees. Fact ¶ 36.

- Managed the machinery other employees' used by engaging maintenance employees to ensure machinery was properly functioning. Fact ¶ 37.

- Provided for employee safety by conducting safety audits and surveys and giving feedback about safety practices. Fact ¶ 38.

- Helped control the budget by helping reduce to reduce costs, such as unscheduled overtime. Fact ¶ 39.

- Monitored legal compliance measures and company policies associated with Occupational Safety and Health Administration ("OSHA") laws and regulations, workplace safety, sexual harassment, employment discrimination, and production quality assurance. Fact ¶ 40.

Likewise, there is no doubt Williams' management work activities were her "primary duty." The FLSA defines "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Regardless of the time she spent in these activities, they set her apart from those she supervised. Williams admitted she became a shift supervisor because she was more experienced with, and knowledgeable about, production processes than other workers, and becoming a shift supervisor was a promotion. Fact ¶ 41.

As a shift supervisor of 23 to 25 production employees, her primary duty was management under the FLSA. *See, e.g.*, *Smith v. Frac Tech Servs., LLC*, No. 4:09CV00679 JLH, 2011 WL 96868, at *27-29 (E.D. Ark. Jan. 11, 2011) (concluding a hydraulic fracturing field coordinator's "primary duty [was] managing a frac crew" because plaintiff oversaw the crew, directed its work, and ensured its operations ran well); *El-Amin v. City of Eudora*, No. 5:19-CV-00020 BSM, 2020 WL 835313, at *2 (E.D. Ark. Jan. 2, 2020) (ruling a police chief's primary duty was management based on work activities including making schedules, calling meetings, requesting resources, and planning initiatives).

### (3) Williams customarily and regularly directed the work of up to 25 other employees.

Third, the executive exemption requires that an employee "customarily and regularly directs the work of two or more other employees[.]" 29 C.F.R. § 541.100(a)(3). Under the FLSA, direction is "customarily and regularly" performed if it is "normally and recurrently performed every workweek[.]" *Id.* § 541.70.

Here, Williams agreed her job was "[t]o supervise the overall shift for all production activities," Fact ¶¶ 7-8, and testified she "was responsible for the whole shift and see[ing] that people do what they were supposed to do," Fact ¶ 4. And, she acknowledged she supervised 23 to 25 other employees at a time. Fact ¶¶ 3, 42.

### (4) Williams's recommendations as to the hiring, firing or discipline of other employees were given particular weight.

Fourth, the executive exemption requires an employee's "suggestions and recommendations" about "hiring, firing, advancement, promotion or any other change of status of other employees" be "given particular weight." 29 C.F.R. § 541.100(a)(4). Even if an employee does not make the "ultimate decision" or "a higher level manager's recommendation has more

importance," suggestions and recommendations have "particular weight" *Id.* § 541.105. "[M]any different employee duties and levels of involvement can work to satisfy this fourth element" including "the offering of personnel recommendations that were acted upon by managers, involvement in screening applicants for interviews, and participation in interviews, among others[.]" *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 885 (8th Cir. 2016) (quoting another case).

Again, Williams's deposition testimony shows she fits the executive exemption. She worked with recruiters and identified candidates for employment, including some family members who ultimately came to work for Viskase. Fact ¶¶ 11-13. She interviewed prospective employees and gave her opinions about their suitability for employment. Fact ¶¶ 9-10, 12. And when there were employee issues, she was involved in the discipline and decision-making process and made recommendations to her manager about the proper course of action, and her managers accepted those recommendations. Fact ¶ 43.

Williams was undeniably "involved in at least one personnel decision, if not more[.]" *Garrison*, 833 F.3d at 886 (affirming summary judgment for employer based on the executive exemption because the plaintiffs, who were "team leaders," managed hourly workers by evaluating and providing feedback about job performance, making recommendations about discipline, scheduling work times, and the like); *Madden v. Lumber One Home Ctr., Inc.*, 745 F.3d 899, 907–08 (8th Cir. 2014) (entering summary judgment on the same basis because the plaintiff employee identified and recommended candidates for employment and directed employees' work).

> **(5) Williams is exempt under the executive exemption, and thus Viskase is entitled to summary judgment regarding her individual FLSA claim.**

Williams fits the executive exemption, and thus her work as a shift supervisor is exempt under the FLSA. Consequently, Viskase is entitled to summary judgment on her individual FLSA claim. *See e.g.*, *id.* (affirming summary judgment in employer's favor based on the FLSA's executive exemption).

> **B. Williams is also exempt under the AMWA's executive exemption and thus her individual AMWA claim also fails as a matter of law.**

"The FLSA and the AMWA impose similar minimum wage and overtime requirements on employers and, in cases involving claims brought under both acts, the courts have concluded that their parallel provisions should be interpreted in the same manner." *Estes v. Buell*, No. 4:18-CV-00026-KGB, 2019 WL 1338396, at *6 & n.2 (E.D. Ark. Mar. 25, 2019) (quoting another case). As is relevant here, the AMWA statutes specifically define "employee" to exclude "[a]ny individual employed in a bona fide executive … capacity[.]" Ark. Code § 11-4-203(3)(A). Furthermore, the AMWA regulations specifically state the AMWA "does not apply to any individual employed in a bona fide executive … capacity[.]" Ark. Code R. 010.14.1-106(B)(1). "For the purpose of defining and delimiting this exemption, the director adopts by reference and incorporates herein 29 C.F.R. Part 541[.]" *Id.* 010.14-106(B)(1)(a).

Because Williams is exempt under the FLSA, she is also exempt under the AMWA's executive exemption. Accordingly, Viskase is entitled to summary judgment on her individual AMWA claim. *See, e.g.*, *Garrison*, 833 F.3d at 884, 886 (affirming summary judgment in employer's favor based on the AMWA's executive exemption).

## IV.    CONCLUSION

The evidentiary record—most notably Williams's own deposition testimony about interviewing, training, scheduling, directing, evaluating, disciplining, and monitoring approximately 25 other employees while she worked as a shift supervisor—shows she was a management employee subject to the FLSA's and AMWA's executive exemption. Accordingly, Viskase is entitled to summary judgment on her individual FLSA and AMWA claims.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.**

/s/ Darin P. Shreves
Patrick F. Hulla
Bar No.  MO #41745
Darin P. Shreves
Bar No. MO #64153
4520 Main Street, Suite 400
Kansas City, MO 64111 Telephone:
816.471.1301
816.471.1303 (*Facsimile*)
patrick.hulla@ogletree.com
darin.shreves@ogletree.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September 2020, a copy of the foregoing was filed with the Court Clerk, using the electronic notification of such filing to the following:

Sean Short
Josh Sanford
Sanford Law Firm, PLLC
One Financial Center
650 South Shackleford, Ste. 411
Little Rock, AR  72211
501.221.0088
888.787.2040 (*Facsimile*)
sean@sanfordlawfirm.com
josh@sanfordlawfirm.com

**ATTORNEY FOR PLAINTIFF**

/s/ Darin P. Shreves
**ATTORNEY FOR DEFENDANT**

44058775.3

11